UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Paul Buckley

    v.                            Civil No. 10-cv-142-JD

Michael J. Astrue, Commissioner
of the Social Security Administration

### REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Paul Buckley moves to reverse the Commissioner's decision denying his application for supplemental security income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. § 1382.  The Commissioner, in turn, moves for an order affirming his decision.  For the reasons given below, I recommend that this matter be remanded to the Administrative Law Judge ("ALJ") for further proceedings consistent with this report and recommendation.

### Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for disability insurance benefit decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991)

(quoting <u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

## Background

The parties have submitted a Joint Statement of Material Facts (doc. no. 12).  That statement is part of the court's record and will be summarized here, rather than repeated in full.  Other facts will be introduced into the court's analysis as necessary.

On March 1, 2005, Buckley saw Dr. Rowland Hazard, complaining of left-sided pain resulting from a work-related accident in September of 2001.  Dr. Hazard provided the following assessment: "Long-standing neck and lower back complex lower extremity pain without a clear anatomic diagnosis, certainly without clear indication for surgical intervention and no real benefit after outpatient physical therapy and various pain procedures."  Administrative Transcript (hereinafter "Tr.") 171.  A February 23, 2007, MRI indicated "[m]ild disc bulges at

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  <u>Tsarelka v. Sec'y of HHS</u>, 842 F.2d 529, 535 (1st Cir. 1988).

L2-L3, L3-L4, and L4-L5 without evidence for nerve root impingement." Tr. 229. Buckley has also been treated for his back condition by Dr. Charles Brackett, his primary care provider, and Dr. Robert Rose of the Pain Management Center at Dartmouth-Hitchcock Medical Center. He has employed several forms of treatment including physical therapy, medication (methadone, Ultram, Tramadol), injections, acupuncture, and use of a TENS unit. However, while Dr. Brackett advised Buckley on several occasions to pursue "functional restoration," Buckley appears never to have done so.

In the same office note in which he assessed Buckley's back condition, Dr. Hazard noted that Buckley "has some depressed moods at times." Tr. 17. Subsequently, Dr. Brackett prescribed various antidepressants including Cymbalta and Trazodone.

On June 18, 2007, at the request of the Social Security Administration's New Hampshire Disability Determination Services ("DDS") unit, Dr. Rexford Burnette completed a Comprehensive Psychological Profile on Buckley ("the 2007 profile"). DDS's request was prompted by Buckley's claim that he was disabled due to depression. Dr. Burnette concluded the profile with the following diagnosis: "Depressive Disorder Not Otherwise Specified." Tr. 187. In support of that diagnosis, Dr. Burnette described Buckley's current level of functioning:

> Understanding and Memory (ability to understand and remember instructions) - Not significantly limited

based on the current evaluation (which did not include
a formal measure of cognitive or memory functions).

Social Functioning (ability to interact
appropriately and communicate effectively with family
members, neighbors, friends, landlord, and fellow
employees) – Mr. Buckley has become much less
interested in socialization than he was before his
back injury.  He feels that he is not very good
company and is easily frustrated and irritated.
However, he maintains a fundamental ability to relate
with others appropriately and effectively when
necessary.

Concentration and Task Completion (ability to
sustain attention and complete tasks) – Although this
claimant describes interference from his pain symptoms
with regard to his ability to sustain attention for
long, the impairment appears to be only mild-to-
moderate at this time; however, his pain symptoms are
rather variable and sometimes they probably represent
a major distraction for him and interfere with his
capacity for completing tasks.

Adaptation to Work or Work-Like Situations
(ability to tolerate stresses common in a work
environment including decision-making, maintaining
attendance schedules, and interaction with
supervisors) – Mr. Buckley has not worked since his
back injury and never had any unusual problems
tolerating work-related stresses, interacting with
supervisors, fellow employees, and customers.
However, it is anticipated that were he to return to
work now he would have increased difficulty managing
stresses due to his experience of pain and the
accompanying depressed mood.

Tr. 187 (emphasis added).

In a Psychiatric Review Technique form dated June 26, 2007,

Dr. Craig Stenslie, a psychologist, determined that Buckley's

depression mildly restricted his activities of daily living and

caused him mild difficulties in maintaining social functioning.

Tr. 199.  He further determined that Buckley's depression

imposed a moderate limitation on his ability to maintain

concentration, persistence, or pace.  Id.  Dr. Stenslie also

opined that Buckley had suffered one or two episodes of

decompensation of extended duration.  Id.

In a Mental Residual Functional Capacity Assessment that he

completed at the same time he performed the Psychiatric Review

Technique, Dr. Stenslie determined that Buckley's depression

imposed moderate limitations in three areas: the ability to

understand and remember detailed instructions, the ability to

carry out detailed instructions, and the ability to respond

appropriately to changes in the work setting.  Tr. 203-04.  For

each of the other seventeen work-related mental activities

listed on the form, Dr. Stenslie indicated that Buckley was not

significantly limited.  Id.  Dr. Stenslie concluded with a

narrative functional capacity assessment:

> The claimant alleges disability due to back problems
> and depression, onset Sept. 2005.  He alleges problems
> with concentration.  MER does not show mental health
> treatment; an OT evaluation finds questionable
> motivation and follow through.  A CE with Dr. R.
> Burnette in June 2007 finds a bit of depression and
> somatic focus, with a diagnosis of nonspecific
> depression.
>
> The claimant's allegations are partially credible due
> to his marginal motivation for rehab and treatment.
> He is able to deal adequately with short and simple
> instruction but not with complexities.  He is able to
> deal adequately with change only in a low stress
> environment.  In other respects, including working
> with others, attention, and maintaining a schedule,

>     [he] is able to function adequately in a workplace
>     setting.

Tr. 205 (emphasis added).

On October 5, 2009, Dr. Burnette completed a Psychological Evaluation of Buckley ("the 2009 evaluation") for New Hampshire Medicaid's Disability Determination Unit.  Dr. Burnette again diagnosed Buckley with "Depressive Disorder Not Otherwise Specified."  Tr. 246.  Among Dr. Burnette's findings are several related to Buckley's ability to work.  Specifically, Dr. Burnette found that Buckley suffered from a functional loss in the area of "Daily Activities" that was midway between "moderate" and "marked," Tr. 244, and that Buckley had a "moderate" degree of functional loss in the area of "Social Interactions" Tr. 245.  Dr. Burnette further found that Buckley "often" had a loss of function in the area of "Task Performance – Work Related," noting: "This client has not worked in a job for eight years.  He performs very little of anything during the typical day.  He attends to housework only as needed and rather minimally (based on his description)."  Id.  Dr. Burnette was unable, however, to determine precisely the degree to which Buckley experienced a functional loss in the area of "Stress Reaction – Work Related,"[2] noting: "This client's experience of

---

[2] Rather than checking one of the boxes labeled "never," "once or twice," "repeated," or "continual," Dr. Burnette circled a question mark in between the boxes for "once or twice" and "repeated."  Tr. 245.

pain and depressed mood have led to a very restricted life style but there [have] not been acute exacerbations or psychiatric hospitalizations." Id.  As for treatment, Dr. Burnette recommended that vocational rehabilitation be put off "until [Buckley's] depression and experience of pain is better managed."  Tr. 246.  In his prognosis, Dr. Burnette: (1) expected Buckley to have "Moderately Limited" psychological functioning following treatment, id.; (2) said that he was unable to predict the probability of Buckley's returning to gainful employment, in the event he was compliant with treatment, "given the considerable complication of [Buckley's] pain symptomatology," id.; and (3) estimated that it would be more than four years before Buckley could return to work, id.

Prior to his back injury, Buckley worked as a landscaper, laborer, and dockworker.  See Tr. 14.  Buckley has not worked since September 26, 2001.

After conducting a hearing on Buckley's claim – the transcript of which includes a mere eleven lines devoted to Buckley's depression – the ALJ issued a decision that includes the following findings:

> 2.  The claimant has the following severe impairments: chronic cervical and lumbar pain; and a depressive disorder.  (20 CFR 416.920(c)).
>
> . . . .
>
> 3.  The claimant does not have an impairment or combination of impairments that meets or medically

equals one of the listed impairments in 20 CFR Part
404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925
and 416.926).

. . . .

4.  After careful consideration of the entire record,
the undersigned finds that the claimant has the
residual functional capacity to perform light work as
defined in 20 CFR 416.967(b) except he is limited to
unskilled jobs.

. . . .

5.  The claimant is unable to perform any past
relevant work (20 CFR 416.965).

. . . .

8.  Transferability of job skills is not an issue in
this case because the claimant's past relevant work is
unskilled (20 CFR 416.968).

9.  Considering the claimant's age, education, work
experience, and residual functional capacity, there
are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR
416.969 and 416.969(a)).

Tr. 9, 10, 11, 14.

In support of his determination that Buckley's mental

impairment did not meet or medically equal the criteria for

listing 12.04 (affective disorders), the ALJ found that Buckley

had: (1) mild restrictions in activities of daily living, see

Tr. 10; (2) mild difficulties in social functioning, see id.;

(3) no difficulties with regard to concentration, persistence,

or pace, see id.; and (4) experienced no episodes of

decompensation, see Tr. 11.  The ALJ based his third finding on

information from a Function Report that Buckley completed in

January of 2008, see Tr. 10, 156-57, but the ALJ did not
indicate what evidence supported his fourth finding.  The ALJ's
third and fourth findings are inconsistent with those of Dr.
Stenslie, who found Buckley to have moderate difficulties
maintaining concentration, persistence, or pace, and to have
experienced one or two episodes of decompensation of extended
duration.  See Tr. 199.  Moreover, while the findings reported
by the ALJ would generally dictate a determination that
Buckley's mental impairment is not severe, see 20 C.F.R. §
416.920a(d)(1); Ortiz v. Sec'y of Health & Human Servs., 890
F.2d 520, 526 n.6 (1st Cir. 1989), the ALJ determined that
Buckley's depression was a severe impairment.  Here, as in
Oritz, the court will "accept the ALJ's description of
[claimant's mental impairment] as a 'severe' impairment, and
disregard his conflicting impairment severity ratings."  Id.

     In discussing his assessment of Buckley's residual
functional capacity ("RFC"), the ALJ explained the weight he
gave to various medical opinions, including both Dr. Stenslie's
psychiatric review technique and his mental residual functional
capacity assessment, see Tr. 14, and Dr. Burnette's 2007
profile, see Tr. 13.  But, while the ALJ paraphrased a portion
of Dr. Burnette's 2009 evaluation, see Tr. 10, 243, which,
arguably, paints a bleaker picture of the effect of Buckley's
depression on his ability to perform work-related activities

than the 2007 profile does, the ALJ did not say anything about the weight he gave the 2009 evaluation, see Tr. 13-14.

## Discussion

According to Buckley, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) made four separate errors in determining his RFC; and (2) erroneously determined that he was capable of performing work in the national economy other than his past relevant work.  The commissioner disagrees, categorically.  Because at least two of Buckley's arguments concerning the ALJ's RFC assessment are meritorious, I recommend that this case be remanded.

To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The only question in this case is whether Buckley was disabled between December 29, 2006, and October 30, 2009.

For the purpose of determining eligibility for supplemental security income,

> [a]n individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

42 U.S.C. § 1382c(a)(3)(A).  Moreover,

> [f]or purposes of subparagraph (A), an individual shall
> be determined to be under a disability only if his
> physical or mental impairment or impairments are of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for his, or
> whether he would be hired if he applied for work. . . .

42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled for the purpose of determining eligibility for SSI benefits, an ALJ is required to employ a five-step process. See 20 C.F.R. § 416.920.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that he is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). He must do so by a preponderance of the evidence. See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at
> Step 4 to show that he or she is unable to do past
> work due to the significant limitation, the
> Commissioner then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform.  Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982).  If the [claimant's] limitations are
> exclusively exertional, then the Commissioner can meet
> [his] burden through the use of a chart contained in
> the Social Security regulations.  20 C.F.R. § 416.969;
> Medical-Vocational Guidelines, 20 C.F.R. pt. 404,
> subpt. P, App. 2, tables 1-3 (2001), cited in 20
> C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458
> (1983). "The Grid," as it is known, consists of a
> matrix of the [claimant's] exertional capacity, age,
> education, and work experience.  If the facts of the
> [claimant's] situation fit within the Grid's
> categories, the Grid "directs a conclusion as to
> whether the individual is or is not disabled."  20
> C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in
> 20 C.F.R. § 416.969.  However, if the claimant has
> nonexertional limitations (such as mental, sensory, or
> skin impairments, or environmental restrictions such
> as an inability to tolerate dust, id. § 200(e)) that
> restrict his [or her] ability to perform jobs he [or
> she] would otherwise be capable of performing, then
> the Grid is only a "framework to guide [the]
> decision," 20 C.F.R. § 416.969a(d) (2001).  See also
> Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)
> (discussing use of Grid when applicant has
> nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) plaintiff's subjective
> claims of pain and disability as supported by the
> testimony of the plaintiff or other witness; and (3)
> the [claimant's] educational background, age, and work
> experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

As noted above, Buckley mounts four separate challenges to the ALJ's assessment of his RFC, and further argues that the ALJ erred at step five of the sequential evaluation process.  The court begins with Buckley's first two RFC arguments, which are dispositive, and then turns, briefly, to his step-five argument.

A. Residual Functional Capacity

Buckley first argues that the ALJ's RFC assessment was not supported by substantial evidence in the record for two related reasons: (1) the ALJ did not set forth the functional effects of his depression in his findings of fact; and (2) the ALJ failed to specifically address the functional limitations set out in Dr. Burnette's 2009 evaluation.  In Buckley's view, the ALJ failed to build an "accurate and logical bridge from the evidence to his conclusion," Young v. Barnhart, 362 F.3d 995, 1002 (7th Cir. 2004), by failing to account for all the evidence in the record.  In response, the Commissioner contends that the ALJ: (1) was not obligated to explain why he did not adopt the functional limitations from Dr. Burnette's 2009 evaluation; and (2) committed, at worst, harmless error by failing to address the 2009 evaluation in greater detail.

As a preliminary matter, it is not quite accurate to say
that the ALJ failed completely to address the functional effects
of Buckley's depression.  While the decision does not state a
finding regarding depression in the bold-face type used for the
ALJ's formal, numbered findings of fact, the ALJ did give "great
weight" to Dr. Burnette's 2007 profile, which the ALJ
characterized as stating that

> the claimant suffers from a depressive disorder; his
> understanding and memory were not significantly
> limited; he maintained a fundamental ability to relate
> with others appropriately and effectively when
> necessary; and he would likely have increased
> difficulty dealing with work stresses due to his pain.

Tr. 13.  Given the degree to which the foregoing paraphrase of
the 2007 profile tracks the language of the regulation that
establishes the procedure for assessing mental RFC,[3] it simply
cannot be said that the ALJ failed to consider the functional
effects of Buckley's depression.  On the other hand, it bears
noting that the ALJ slightly mischaracterized Dr. Burnette's

---

[3] That regulation provides:

> Mental abilities.  When we assess your mental
> abilities, we first assess the nature and extent of
> your mental limitations and restrictions and then
> determine your residual functional capacity for work
> activity on a regular and continuing basis.  A limited
> ability to carry out certain mental activities, such
> as limitations in understanding, remembering, and
> carrying out instructions, and in responding
> appropriately to supervision, coworkers, and work
> pressures in a work setting, may reduce your ability
> to do past work and other work.

20 C.F.R. § 416.945(c).

opinion on stress, which was that if Buckley "were to return to work now he would have increased difficulty managing stresses due to his experience of pain and the accompanying depressed mood." Tr. 187 (emphasis added). In other words, Dr. Burnette did not opine that Buckley would have difficulty managing work stresses solely because of his pain (claims of which the ALJ partially discounted), but, rather, Dr. Burnette opined that Buckley's increased difficulty in managing work stresses would be a product of both his experience of pain and his depression.

Moreover, there is also a problem with the way in which the ALJ handled Dr. Burnette's 2009 evaluation. Under the relevant regulations, the ALJ was obligated to consider every medical opinion he received. See 20 C.F.R. § 416.927(d). Here, however, the ALJ did not address Dr. Burnette's 2009 evaluation in the same way he addressed Dr. Burnette's 2007 profile and the medical opinions provided by Ernie Roy, Dr. Brackett, Dr. Stenslie, and Dr. Burton Nault, see Tr. 13-14, nor did he give any explanation for that differential treatment. The ALJ did make passing reference to Dr. Burnette's 2009 evaluation, see Tr. 10, but he did not say how much weight he gave it. And, notwithstanding the apparent discrepancy between Dr. Burnette's 2009 evaluation and the ALJ's RFC assessment, the ALJ concluded his discussion of the medical opinion evidence by stating "that no treating or examining medical or psychological professional

opined limitations beyond the residual functional capacity" he
determined.  Tr. 14.

The Commissioner correctly concedes that the ALJ should
have addressed Dr. Burnette's 2009 evaluation in greater detail,
but argues that his failure to do so was, at most, a harmless
error.  Among other things, the Commissioner points out that
rather than tracking the standards for assessing RFC, Dr.
Burnette's 2009 evaluation tracks the criteria used at steps two
and three of the sequential evaluation process to determine the
severity of a claimant's impairment.  He further notes that the
evaluation was based largely on Buckley's own less-than-credible
subjective self-reporting.

The court is unable to dismiss the ALJ's treatment of the
2009 evaluation as easily as the Commissioner does.  For one
thing, it is not at all clear that the ALJ found Buckley's
statements about depression to be not credible; the ALJ's
credibility assessment was directed toward Buckley's claims of
disabling pain, albeit a condition related to his depression.
See Tr. 12-13.  Moreover, the Commissioner does not explain how
the 2009 evaluation is any different from the 2007 profile – to
which the ALJ accorded great weight – with regard to the issue
of subjective self-reporting.  Finally, the Commissioner is
correct in observing that Dr. Burnette's status as an examining
source rather than a treating source diminished the ALJ's

obligation to explain the weight he gave the 2009 evaluation.
See 20 C.F.R. § 416.927(d)(2) ("We will always give good reasons
in our . . . decision for the weight we give your treating
source's opinion."). However, the relevance of that opinion
cannot be discounted, given both the lack of a presumably
weightier treating-source opinion on the effects of Buckley's
depression and the ALJ's heavy reliance on Dr. Burnette's 2007
profile. This is particularly the case where the 2007 profile,
at least on the surface, seems to be based upon the same basic
kinds of evidence that support the 2009 evaluation.

In sum, under the circumstances of this case, the ALJ's
failure to more fully address Dr. Burnette's 2009 evaluation
counsels in favor of remanding to the ALJ for further
proceedings.

Buckley's second argument is that while the ALJ gave great
weight to Dr. Stenslie's finding that he, Buckley, "can deal
with change [only] in a low stress environment,"[4] Tr. 14, the ALJ
erred by failing to set forth that functional limitation in his
RFC determination. The Commissioner contends that by limiting
Buckley's RFC to unskilled work, the ALJ adequately accounted
for any depression-related difficulties Buckley may have in
dealing with stress and/or changes in the workplace.

---

[4] The word "only" appears in Dr. Stenslie's RFC assessment,
but not in the ALJ's paraphrase thereof. Tr. 14, 205.

As noted above, "[a] limited ability to carry out certain mental activities, such as limitations in . . . responding appropriately to . . . work pressures in a work setting, may reduce [one's] ability to do past work and other work."  20 C.F.R. § 416.945(c).  "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a <u>routine</u> work setting."  SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996) (emphasis added).  More specifically:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a <u>routine</u> work setting.  A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

SSR 85-15, 1985 WL 56857, at *4 (1985) (emphasis added).

By determining that Buckley was capable of performing unskilled light work, the ALJ necessarily determined, if implicitly, that Buckley had the ability to deal with changes in a routine work setting.  Evidence for that determination is problematic, at best.  In support of his determination that Buckley had no difficulties with concentration, persistence or pace – made in the context of his finding that Buckley's

depression did not meet or medically equal a listed impairment –
the ALJ cited Buckley's January, 2008, Function Report.  In
response to the question "How well do you handle changes in
routine?" Buckley responded: "fair."  Tr. 157.  That is the
extent of the record support for the proposition that Buckley
can deal with changes in a routine work setting.

The RFC portion of the ALJ's decision includes no
discussion of the relationship between Buckley's depression and
his ability to meet the demands of unskilled work other than a
brief paraphrase of Dr. Stenslie's report, which referred to "a
low stress environment" rather than a "routine work setting."
Even bearing in mind that it falls to the ALJ to weigh the
evidence, see Irlanda Ortiz, 955 F.2d at 769, the court has
little difficulty concluding that neither Buckley's one-word
answer to a question about dealing with changes in routine
(which was cited by the ALJ in the context of his step-three
analysis, not his RFC determination), nor Dr. Stenslie's
statement that Buckley can deal with change only in a low-stress
environment, could be accepted by a reasonable mind to support
the conclusion that Buckley had the ability to deal with changes
in a routine work setting.[5]  See Currier, 612 F.2d at 597.

---

[5] The Commissioner himself has pointed out the pitfalls of
both relying on a claimant's self-reporting, see Resp't's Mem.
of Law (document no. 11-1) 11, and applying step-two and step-
three "paragraph B" findings to step-four and step-five RFC
assessments, see id. at 10-11.

The Commissioner's principal response to Buckley's second argument, framed in reliance on Ortiz, is that by limiting Buckley to unskilled work, the ALJ adequately accounted for any mental impairment that may result from Buckley's depression. While the ALJ did limit Buckley to unskilled work in his RFC assessment, in a one-sentence finding of fact, there is no discussion in the RFC section of the ALJ's decision that relates Buckley's mental RFC to the demands of unskilled work.  That distinguishes this case from Ortiz, in which it appears that that the ALJ did not just announce a finding, but actually explained, narratively, the relationship between the claimant's mental impairment and his ability to perform unskilled work. See 890 F.2d at 525-26.  Moreover, unlike the claimant in Ortiz, who had previously done semiskilled work, id. at 523, Buckley has only ever done unskilled work.  Thus, for the Ortiz claimant but not for Buckley, an RFC for unskilled work was an actual limitation on the range of jobs the claimant had the capacity to perform.

Ortiz is unavailing for yet another reason.  In that case, the court of appeals for this circuit held that it is permissible for an ALJ to rely on the Medical-Vocational Guidelines, see 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3, and eschew the use of vocational testimony, when he or she finds a claimant unable to perform the full range of light work but

concludes "that [the] claimant's mental disorder affect[s] only
the occupational skill level at which he [can] operate."  890
F.2d at 526.  The court cautioned, however, that "such a
shorthand approach is permissible, so long as the factual
predicate . . . is amply supportable."  Id.  The ample support
in Ortiz consisted of opinions from medical professionals:

> [B]oth doctors [i.e., Dr. Quinones and Dr. Iglesia]
> rated as "not significantly limited" the ability of
> claimant: (1) to understand, remember and carry out
> simple instructions; (2) to accept instructions and
> respond appropriately to criticism from supervisors;
> and (3) to sustain an ordinary routine without special
> supervision.  Quinones found the ability to get along
> with coworkers to be moderately limited, but Iglesia
> deemed it not significantly so.  And while Iglesia
> found a moderate limitation on claimant's ability to
> respond appropriately to changes in the work setting,
> Quinones found no evidence of limitation in that
> category.  In summary, as to each of the "basic mental
> demands" of unskilled work enumerated by the
> Secretary, a finding of no significant restriction was
> offered by at least one of these doctors.

Id. at 527.  Here, by contrast, the only medical professional to
provide a mental RFC assessment opined that Buckley was "able to
deal adequately with change only in a low stress environment."
Tr. 205.  And, in the 2007 profile, to which the ALJ gave "great
weight," Dr. Burnette stated that "it is anticipated that were
he to return to work now he would have increased difficulty
managing stresses due to his experience of pain and the
accompanying depressed mood."  Tr. 187.  Unlike the record in
Ortiz, the record in this case includes no medical opinion that
Buckley is "able to deal with changes in a routine work

setting." SSR 85-15, at *4. Accordingly, the Commissioner's reliance on Ortiz is misplaced.

The lack of substantial evidence in the record to support the ALJ's finding that Buckley is able to deal with changes in a routine work setting is a second ground for remand. Because Buckley's first two arguments against the ALJ's RFC determination are meritorious, and call for remand, there is no need to address Buckley's other two RFC arguments.

## B. The ALJ's Step-Five Determination

Buckley argues that the ALJ erred at step five of the sequential evaluation process by relying on the Medical-Vocational Guidelines rather than taking testimony from a vocational expert. Expert testimony was necessary, Buckley contends, because the ALJ erred in determining that that his depression had little or no effect on his ability to perform the full range of unskilled light work. The Commissioner concurs with Buckley's framing of the legal issue and states that that if the court finds merit in Buckley's challenge to the ALJ's RFC assessment, then the step-five finding cannot stand. The court has found merit in Buckley's challenge to the ALJ's RFC determination. Accordingly, the step-five finding cannot stand.

## Conclusion

For the reasons given above, I recommend that: (1) the Commissioner's motion for an order affirming his decision (document no. 11) be denied; and (2) Buckley's motion for an order reversing the Commissioner's decision (document no. 9) be granted to the extent that the case is remanded to the ALJ for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauth. Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 972 F.2d 4, 6 (1st Cir. 1986).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  January 7, 2011

cc:  Raymond J. Kelly, Esq.
     Gretchen Leah Witt, Esq.